UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
WILLIAM ENRIQUE SANCHEZ
ALFARO,

                          Petitioner,

            v.

MARKWAYNE MULLIN, Secretary,
U.S. Dept. of Homeland Security,
JUDITH ALMODOVAR, Field Office
Director of Enforcement and Removal
Operations, New York City Field Office,
Immigration and Customs Enforcement,
HON. PAMELA BONDI, U.S. Attorney
General, Executive Office for
Immigration Review, RAUL
MALDONADO, JR., Warden of
Metropolitan Detention Center Brooklyn,

                          Respondents,

------------------------------------------------------x

**FILED**
**CLERK**

3/16/2026 5:11 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM**
**& ORDER**
Civil Action No.
26-0766 (GRB)

**GARY R. BROWN, United States District Judge:**

> *The Constitution does not permit the United States Government to target people on the streets, arrest them without serving any papers, deny them meaningful due process, and detain them for arbitrary or indefinite periods of time while they engage in fishing expeditions to justify the arrests. That would turn the Constitution on its head and is precisely why the Fifth Amendment exists. No one is to be deprived of life, liberty or property without due process, lest the innocent suffer.[1]*

As in another case pending before the undersigned,[2] Petitioner had

qualified for Special Immigrant Juvenile Status ("SIJS"), a classification awarded

---

[1]   *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 373 (S.D.N.Y. 2019).

[2]   *Garcia Lanza v. Noem*, No. 26-0029 (GRB), __ F. Supp. 3d ___, 2026 WL 585130, at *1 (E.D.N.Y. Mar. 3, 2026).  Familiarity with the *Garcia Lanza* opinion is assumed, and that opinion is incorporated herein by reference.

to minors who, according to U.S. Citizenship and Immigration Service ("USCIS"), "need the protection of a juvenile court because [they] have been abused, abandoned, or neglected by a parent."[3]  Petitioner received a grant of deferred action and work authorization which remained in effect, meaning he had the right to live and work in the United States pending further processes. Nevertheless, as part of U.S. Immigration and Customs Enforcement's ("ICE") recent surge in enforcement efforts, in violation of statutes, regulations and the Constitution, ICE officers arrested, detained and imprisoned Petitioner without a warrant.  An evidentiary hearing revealed illegal arrest and detention tactics adopted by ICE and an egregious lack of training provided to its officers, who seemed entirely unfamiliar with legal requirements associated with arrest and detention and oblivious to the illegality of these practices.

**Background**

Born in El Salvador, Petitioner William Enrique Sanchez Alfaro, now 25, has been in the United States since his arrival as an unaccompanied minor in 2018.  Since then, he helped his family operate a welding business, earning a suitable income and dutifully paying taxes.  Docket Entry ("DE") 8-1.  He has no criminal record.  Petitioner has provided the Court with hundreds of pages of material attesting to his character and remarkable community support.  In sworn statements, acquaintances describe him as "a model citizen . . . law-abiding, hardworking, compassionate, and committed to making

---

[3]    https://www.uscis.gov/working-in-US/eb4/SIJ [https://perma.cc/D3YX-GTTA].

meaningful contributions to society," "of exceptional moral character," and "kind, dependable, and trustworthy." *Id.* at 5, 8, 11.[4]

In 2022, USCIS approved Petitioner's Petition for Amerasian, Widow(er), or Special Immigrant Form I-360 ("I-360"), rendering him the beneficiary of SIJS. On May 27, 2022, he was granted deferred action, meaning that immigration officials committed to take no action against him until at least April 2026, and authorized him to work in the U.S. in the interim. DE 1 ¶7, Ex. C.[5] He was issued a U.S. Work Authorization Card valid through May 9, 2026. DE 1-8.

On February 6, 2026, an ICE officer was surveilling a residence in Suffolk County, having parked in an unmarked vehicle across the street. Transcript of Proceedings February 25, 2026 ("Tr.") at 4-5. He had been assigned to locate and apprehend an alien who had been ordered removed by an immigration court. Tr. 4. The officer was armed with a photograph of the individual sought and had a good view of the scene aided by binoculars. Tr. 6, 12. Unbeknownst to the officer, the home was that of Petitioner who, along with his father, was preparing to leave for work.

---

[4] As in *Garcia Lanza*, these bona fides have some bearing on the Court's determinations, including the rationale underlying Petitioner's release on bail. Simultaneously, these undisputed facts demonstrate that Petitioner's arrest runs counter to the purposes behind heightened immigration enforcement, purportedly aimed at criminals and other dangerous individuals.

[5] *See, e.g. Garcia Lanza*, 2026 WL 585130 at *5; USCIS Policy Manual, Vol. 1, Part H, Ch. 2(A)(4), https://www.uscis.gov/policymanual/volume-1-part-h-chapter-2. [https://perma.cc/EFW3-J5FH] ("[a]liens granted deferred action are considered to be in a period of stay authorized under USCIS policy for the period deferred action is in effect.").

Petitioner and his father stood outside of their home, waiting for a lift from a coworker. Upon observing Petitioner, the officer believed that he "did strongly resemble the target of the enforcement effort." Tr. 5-6. [6]

Meanwhile, the surveilling officer had been identified by a group of protesters, who recognized his vehicle. Tr. 7. One protester "started screaming 'ICE is here!'" Tr.

---

[6] As in *Garcia Lanza*, the officer testified under oath that he had mistaken Petitioner for another unidentified, undescribed individual for whom the officers were allegedly searching. Having heard the testimony, observed his demeanor and considered all of the facts, the Court credits the testimony of the officer in this instance. This rationale has become so commonplace in cases involving ICE enforcement efforts that such testimony must be examined carefully. *See*, *e.g.*, *Garcia Lanza v. N*oem, 2026 WL 585130, at *1 ("ICE officers targeted Garcia Lanza for arrest simply because he looked like someone else for whom the agents were purportedly searching"); *Guardado v. Maldonado*, No. 26-CV-1170 (OEM), 2026 WL 670156, at *2 (E.D.N.Y. Mar. 10, 2026) (petitioner "matched the description of their primary target"); *Acuapan v. Bondi*, No. 26-CV-00384 (OEM), 2026 WL 507889, at *1 (E.D.N.Y. Feb. 24, 2026) ("Petitioner, an individual matching the target's description"); *Castellon v. Doe*, No. 2:26-CV-647 (NJC), 2026 WL 326947, at *4 (E.D.N.Y. Feb. 7, 2026) (officer "fails to provide the description of the target that agents were looking for"); *Sanchez Atz v. Noem*, No. 26-CV-00214 (OEM), 2026 WL 320238, at *1 (E.D.N.Y. Feb. 6, 2026) ("they observed a male subject matching the physical description of the third-party target") *Ndoye v. Joyce*, No. 25-CV-8856 (VSB), 2026 WL 306387, at *8 (S.D.N.Y. Feb. 5, 2026) (unclear "whether he was the target in question"); *R.P.L. v. Maldonado*, No. 25-CV-6886 (HG), 2025 WL 3731864, at *1 (E.D.N.Y. Dec. 26, 2025) ("a records check confirmed that Petitioner was not their original target"); *Mejia v. Joyce*, No. 25-CV-10462 (LAK), 2025 WL 3719632, at *1 (S.D.N.Y. Dec. 23, 2025) ("Mistakenly believing that Mr. Mejia was their intended target . . ."). If such testimony in other matters is determined to be tailored or fabricated, severe consequences will follow. Here, though, there was corroborating evidence that the officer's efforts were not pretextual: one of the men detained recognized the individual in the photograph, advising the officers that he recently moved from the residence now occupied by the Petitioner. Tr. 12.

7.[7]  The officer observed Petitioner get into a Ford Expedition driven by his coworker and depart for work.  Tr. 6.  To distract the protesters, the surveilling officer drove off.  Tr. 8.  He radioed in a description of the car in which Petitioner was travelling, asking that another unit follow the car and make a vehicle stop.  Tr. 7-8.

A second officer encountered the Ford Expedition, called for backup, followed for a time, and then made a vehicle stop.  Tr. 27.  When asked for identification, all three men produced valid Work Authorization cards issued by USCIS.  Tr. 41.  The officers quickly realized that neither Petitioner nor the two individuals with him were the target they were seeking.  Tr. 12-13 (officer confirmed through interview of subjects); Tr. 15 (records check confirmed that Petitioner not the individual sought); Tr. 33 (review of IDs showed Petitioner was not target).  Meanwhile, their records check indisputably revealed that Petitioner had SIJS, a grant of deferred action, and work authorization.  Tr. 17-20.

One might expect that, having recognized that they had the wrong person, and that Petitioner and those accompanying him had valid work authorizations issued by USCIS, the officers would have released them.  *See, e.g., Noem v. Vasquez Perdomo*, 146 S. Ct. 1, 3 (2025) (Kavanaugh, J., concurring) ("If the person is . . . lawfully in the United States, that individual will be free to go after the brief encounter.  Only if the person is

---

[7]  Notably, the protester's announcement of ICE's presence had no effect on Petitioner, his father or his coworker.  They did not run or attempt to flee the scene (which was Petitioner's home), but calmly went about their business, and were cooperative with the officers during the ensuing stop.  Tr. 5-7, 9 ("everyone was being cooperative . . . it was a calm setting").  Since all three carried valid Work Authorization Cards issued by the Government, they seemingly had no reason to fear arrest or detention.

illegally in the United States may the stop lead to further immigration proceedings"); *cf. Trump v. Illinois*, 146 S. Ct. 432, 436 (2025) (Kavanaugh, J., concurring) (further limiting circumstances under which "interior immigration stops" might be appropriate). Nevertheless, the officers arrested Petitioner, taking him, and the two individuals with him, into custody.  Tr. 18.

The ICE officers' testimony revealed a woeful lack of training and understanding of legal principles.  One officer, with the agency for 14 years, testified that he *was* aware that Petitioner had a grant of deferred action, yet decided to detain him nonetheless, confidently (though erroneously) declaring that "deferred action does not affect removal proceedings."  Tr. 22.  He also knew that no removal proceedings were pending against Petitioner, yet he believed that Petitioner was properly taken into custody because such proceedings *might* be instituted.  Tr. 21-22.  Another officer with 18 years' experience stated "if you have SIJ status it doesn't make you not removable" and, based on that assessment, believed that Petitioner was subject to arrest.  Tr. 31.  At the same time, he acknowledged being unfamiliar with import of SIJS.  Tr. 45.

The third officer – with nearly 20 years' experience as an immigration officer - testified that individuals with SIJS and deferred action were "all amenable to removal proceedings … they can be taken into ICE custody and placed into removal proceedings."  Tr. 36.  The same was true, he testified, of cooperating crime victims

possessing a U Visa. Tr. 39.[8]  Such a visa was held by Petitioner's coworker, who was also arrested and detained and, at the time of the February 25, 2026 hearing, remained imprisoned.  *Id.*  The officer testified that field ICE officers can make the determination that these individuals "*might* be placed into removal proceedings," and therefore "us, as officers, take them into custody and place them into removal proceedings, and then, a supervisor, you know, signs the documents you know, putting them with the notice to appear and going through the whole removal proceedings."  Tr. 37.

Collectively, the officers' testimony illustrates that arrest and detention practices deployed by ICE constitute a perversion of customary law enforcement practices in America.  Under our Constitution, law enforcement officers may only effect an arrest when armed with a warrant or confronted with probable cause to make that arrest. Here, ICE officers presume that they will effect an arrest *unless* they can discover cause *not* to do so by performing a records check.  Tr. 17 ("We are going to see if … there is any reason not to take him into custody and what detention authority . . .. it would fall

---

[8]    According to the USCIS website, U Visas are available "for victims of certain crimes who have suffered mental or physical abuse and are helpful to law enforcement or government officials in the investigation or prosecution of criminal activity. . . The legislation was intended to strengthen the ability of law enforcement agencies to investigate and prosecute cases of domestic violence, sexual assault, trafficking of aliens and other crimes, while also protecting victims of crimes who have suffered substantial mental or physical abuse due to the crime and are willing to help law enforcement authorities in the investigation or prosecution of the criminal activity. The legislation also helps law enforcement agencies to better serve victims of crimes."  https://www.uscis.gov/humanitarian/victims-of-criminal-activity-u-nonimmigrant-status [https://perma.cc/2KK6-K9D6].  At the hearing, the officer, though claiming he was familiar with the purpose of a U visa, was unable to articulate it.  Tr. 39-40.

under"); Tr. 38 ("it's usually like, no, they are good to pick up.  There is nothing prohibiting us from placing them into, you know, custody"); Tr. 42 ("there was nothing precluding us from detaining any of the subjects and putting them into removal proceedings"); *cf.* Tr. 13 ("So essentially I was standing there waiting to see, you know, how the checks came back, if he was subject to detention and removal.").  Disturbingly, one officer testified that such treatment would equally apply to citizens, who would be arrested unless able to prove their citizenship by always carrying proof of citizenship, having a passport appear on a records check or convincing the officer that they were U.S. citizens.  Tr. 47-48.

*After* Petitioner's arrest, Respondents initiated removal proceedings against Petitioner by issuing a Notice to Appear.  The only charge in the Notice to Appear arises from "being in the United States without being admitted or paroled," and further states that "You are an alien present in the United States who has not been admitted or paroled."  DE 1-9.  Then, by letter dated February 6, 2026, USCIS advised Petitioner that, as in *Garcia Lanza*, it had terminated his period of deferred action and planned to revoke his employment authorization.  DE 13-1.  As neither the letter nor Respondents' filings offer any explanation for this act other than it being an exercise of discretion, and there was no documented change in circumstances, the Court finds that the revocation was impermissibly motivated by ICE's illegal arrest of Petitioner.  *See Garcia Lanza*, 2026 WL 585130 at *6-9.

ICE detained Petitioner at the Metropolitan Detention Center in Brooklyn, a facility so notoriously plagued with issues arising from overcrowding and

underfunding that judges in this Circuit have reduced or modified sentences for convicted criminals based on the conditions of confinement there.[9]  Yet Petitioner, who has neither been charged nor convicted of any wrongdoing, and was legally living and working in the United States, was imprisoned there and, but for judicial intervention, would still be there or in another detention facility.

Petitioner's attorney filed the instant habeas petition on February 10, 2026. Following an emergency bail hearing on February 12, the Court ordered his immediate release on his own recognizance.  On February 25, 2026, the Court held a hearing pursuant to 28 U.S.C. § 2243 to fully develop the factual record.

This opinion follows.

**DISCUSSION**

**A.  The Arrest and Detention of Petitioner was Illegal**

Having reviewed multiple decisions from this Court, Respondents' counsel has conceded that "Respondents cannot prevail in this action."  DE 13 at 2 (citing *Garcia Lanza*, 2026 WL 585130; *Rodriguez-Acurio v. Almodovar*, No. 2:25-CV-6065 (NJC), 2025 WL

---

[9]    *United States v. Colucci*, 743 F. Supp. 3d 452, 453 (E.D.N.Y. 2024) (waiving incarceratory sentence if defendant designated to MDC due to its "dangerous, barbaric conditions"); *United States v. Chavez*, 710 F.Supp.3d 227, 234 (S.D.N.Y. Jan. 4, 2024) (allowing convicted narcotics defendant subject to a multi-year sentence remain at liberty pending surrender, based largely on the conditions at MDC); *United States v. Griffin*, No. 22-CR-408 (EK), 2024 WL 2891686, at *3 (E.D.N.Y. June 10, 2024) (granting a motion for compassionate release based primarily on the conditions at MDC for a defendant serving time for violating supervised release); *United States v. Santana,* No. 22-CR-368 (VM), 2024 WL 2275037, at *2 (S.D.N.Y. May 20, 2024) ("Given the severe prison conditions that prevail at the MDC (conditions that amount to imposing harsher punishments on prisoners), this Court and others have adjusted sentences of defendants in custody there for lengthy periods.").

3314420 (E.D.N.Y. Nov. 28, 2025) ("Rodriguez-Acurio's detention was unlawful from its inception because ICE detained her under the wrong statute and without any notice or opportunity to be heard"); and *Gopie v. Lyons,* No. 25-CV-05229 (SJB), 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) (post-arrest issuance of administrative arrest warrant and NTA meant that "ICE arrested Gopie when they had no authority to do so").  Indeed, ICE's arrest and detention of Petitioner was indisputably unlawful in at least four ways:

## I.    *ICE Officers are Not Empowered to Effect Warrantless Arrests Under these Circumstances*

While ICE Officers have limited authority to effect warrantless arrests, such authority is proscribed to individuals "likely to escape before a warrant can be obtained."  8 U.S.C.A. § 1357; 8 C.F.R. 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained unless the person is likely to escape before a warrant can be obtained.").  Such a claim has not and cannot be made here.  Petitioner has a documented history of lawful interaction with immigration officials, obtained SIJ status, deferred action and work authorization, has worked and paid taxes, and has no criminal record.  He was followed by immigration officers from his known residence on his way to work and, when confronted by officers, presented valid U.S. Government identification and was fully cooperative with the officers.  No twist of logic or sophistry can transform him into a potential escapee.

Yet the officers, lacking a warrant or other legal process, arrested and jailed him (and his associates) nevertheless.  Such an arrest, under 8 U.S.C. § 1357 and 8 C.F.R. 287.8(c)(2)(ii), was plainly illegal.[10]

## II.      *Post-Arrest Issuance of an Administrative Arrest Warrant and Notice To Appear Does Not Cure the Illegal Arrest of Petitioner*

As in many cases, ICE officers "have openly admitted that they arrested the wrong man and that the administrative arrest warrant and related NTA were issued *after* the arrest in question."  *Garcia Lanza* at 9-10; DE 13 at 2 (acknowledging that arrest warrant and NTA issued after arrest).  Courts nationwide have repeatedly rejected this manifestly illegal practice by ICE officers with little effect.  *Garcia Lanza* at 10 (collecting cases); *cf. J.R.R. v. Genalo*, No. 26-CV-1245 (PKC), 2026 WL 691803, at *3 (E.D.N.Y. Mar. 11, 2026) (questioning ICE detention authority "where Petitioner has no removal proceedings pending.").  Yet, the officers' testimony confirmed that this illegal practice has become standard procedure for ICE enforcement efforts in this district.  Tr. 37.

## III.     *Individuals with SIJS, Grants of Deferred Action and Valid Work Authorizations Are Not Subject to Arrest*

As the recipient of an unexpired period of deferred action and a valid work authorization from USCIS – by which the agency committed to take no steps to effect his removal and permitted him to work in the U.S. – Petitioner could not lawfully be arrested and detained by ICE, particularly in absence of changed circumstances and

---

[10]   Respondents cling to the argument regarding detention authority under 8 U.S.C. §1226(a).  DE 13 at 2-3.  Given the facts of this case, "the 1225/1226 distinction argument misses the mark entirely." *Garcia Lanza*, 2026 WL 585130 at *6.

without notice or opportunity to be heard. *Garcia Lanza*, 2026 WL 585130 at *4-5.[11]

Notably, while Respondents continue to contend that revocation of deferred action lies

within their discretion, it seems that such discretion resides with USCIS, not ICE, and

therefore could not be revoked by the ICE officers. *Compare USCIS Policy Manual*, Vol.

6, Part J, Ch. 4 (G)(1) [https://perma.cc/LPQ6-NC46] ("If USCIS previously granted

deferred action to an alien with SIJ classification in the exercise of discretion, the alien's

deferred action remains valid for the authorized period, unless terminated by USCIS")

*with* Tr. 20 ("the deferral part is what has, you know, become confusing . . . but he's still

coming into custody") *and* Tr. 44 (deferred action "means we can't remove him at that

time, you know, they won't be able to be removed from the United States until we clear

up that deferred action.").

IV.   *Post-Arrest Efforts to Revoke Petitioner's Deferred Action and Work Authorization is Retaliatory, Discriminatory and Unconstitutional*

Respondents' post-arrest efforts to summarily revoke Petitioner's deferred action

and work authorization violates his rights under statute, regulations and the Due

Process clause. *Garcia Lanza*, 2026 WL 585130 at *6-9; *see J.R.R.*, 2026 WL 691803, at *4

---

[11] On this motion, Respondents nip at the edges of the Court's rulings, contending that SIJ status does not constitute "parole" for the purposes of providing freedom from arrest and detention. DE 13 at 3 (arguing, without authority, that the reference to "parole" §1255(h) is limited to adjustment and "is not deemed to be the equivalent of parole for any other purposes."). The thought is, then, that USCIS may award SIJ status, deferred action and work authorization to individuals, but ICE can arrest and jail them upon sight. This would be the equivalent of permitting police to imprison licensed drivers for operating a motor vehicle without a license. Ultimately, the Court's construction of "parole" matters little, as the ICE officers testified that individuals who have been paroled were subject, under ICE's current practice, to arrest and detention. Tr. 40-49.

("the Court is concerned about the abrupt revocation of Petitioner's deferred action and how that revocation could impact his work authorization."). In a similar context, the Second Circuit has emphasized "the importance of notifying affected parties of material changes in their proceedings and statuses and of giving them an opportunity to respond. This is true for any legal proceeding, but is a particular and continuing concern for immigrants throughout the multistep administrative process." *Mantena v. Johnson*, 809 F.3d 721, 724 (2d Cir. 2015). To the extent Respondents claim that such measures represent an exercise of discretion, that exercise remains unexplained, and "not only violate[s] statutory and regulatory protections, but [is] pretextual, discriminatory, arbitrary and capricious so as to run afoul of constitutional protections." *Garcia Lanza*, 2026 WL 585130 at *9.

### B. Respondents Must Address the Lack of Proper Training, Practices and Procedures within ICE.

While the facts elicited about the arrest and detention of Petitioner are brutal and unacceptable, the evidence highlights a more systemic concern: the officers who testified – all sworn to uphold the law – proved unaware of and oblivious to the requirements of the law. Their authority to effect arrests is predicated upon "successful complet[ion of] basic immigration law enforcement training." 8 C.F.R. §287.5 (c) (1). Importantly, these officers were not "rookies" – each had more than a decade's experience in immigration enforcement. The combination of the officers' lack of training and preparation and the extraordinary pressure to exponentially increase the number of immigration arrests results in a proverbial recipe for disaster. The

byproduct is as unfortunate as it was foreseeable: arrest and detention practices that violate the law, regulations and Constitution of the United States.

Ultimately, responsibility does not lie at the doorstep of the officers who testified.[12]  Rather, it falls to Respondents in this case, as well as agency counsel, all of whom bear the duty to uphold the law.  Irrespective of what one might believe about the wisdom of immigration policies adopted by this Administration, Respondents must ensure that these policies are implemented lawfully. [13]

In decision after decision, judges have called out illegal practices by ICE.[14]  And yet the officers who testified here revealed an astonishing lack of awareness of their

---

[12]  While ICE officers apparently lack the knowledge and training necessary to lawfully carry out their responsibilities, significant – and perhaps unrealistic – expectations have been placed upon them.  It is widely reported that ICE officers are expected to effect thousands of arrests per day.  That these demands have overwhelmed the resources available to them has already been made clear to this Court in a related case.  *Clarke v. U.S. Dep't of Homeland Sec.*, No. 25-CV-6773 (GRB), 2025 WL 3674471 (E.D.N.Y. Dec. 18, 2025) (involving the conversion of part of the Courthouse in which this Court presides into a makeshift and illegal prison facility).

[13]  "While the Executive Branch retains the right – as it has done – to set policy regarding immigration matters, it is forbidden from trampling our system of laws – a system which has safeguarded this nation for close to 250 years." *Garcia Lanza*, 2026 WL 585130 at *1; *Mejia Huerta v. Noem*, No. 26-CV-01248 (MMG), 2026 WL 555014, at *4 (S.D.N.Y. Feb. 27, 2026) ("Regardless of one's views about the wisdom of policies adopted by DHS regarding mass arrests and removals of non-citizens, every American should expect and demand that, at a minimum, Government agencies follow the Constitution, the law, and their own regulations when doing so.")

[14]  Some district courts have been compelled to issue injunctions and similar relief to ensure ICE's future compliance with law. *See, e.g., U.H.A. v. Bondi*, No. 26-417 (JRT) (DLM), 2026 WL 558824 (D. Minn. Feb. 27, 2026) (enjoining detention of any individual with refugee status and no criminal record who is awaiting adjustment to

duties under the law, while ICE has seemingly developed workaday procedures that fail to account for legal requirements.  Law enforcement officers cannot uphold laws of which they are unaware or do not understand.  Respondents, charged with enforcing the laws of this nation, cannot ignore the scores of decisions which they have unsuccessfully litigated before this Court and others, without taking action to ensure that their agents and agencies are not acting in contravention of the law.[15]

Respondents must review the arrest and detention practices being utilized by ICE in this judicial district as well as the training provided to its officers.  These matters must be addressed and, as appropriate, remediated by Respondents forthwith.  As such, the Court will direct Respondents' counsel to provide a filing within 21 days from the date of this Order, identifying the steps that will be taken to ensure that future ICE enforcement actions within the Eastern District of New York shall be conducted in a

---

lawful permanent resident status); *Mercado v. Noem*, 25-CV-6568,  800 F. Supp. 3d 526 (S.D.N.Y. 2025) (preliminary injunction issued to remediate unconstitutional conditions of confinement at 26 Federal Plaza); *Mira Castro v. Noem*, No. 2:26-CV-696 (NJC), 2026 WL 369713 (E.D.N.Y. Feb. 10, 2026) (enjoining the re-detention and denial of bond in any subsequent proceeding brought against the petitioner); *A.R. v. Noem*, No. 5:25-CV-03565 (MEMF) (PVC), 2026 WL 194850 (C.D. Cal. Jan. 26, 2026) (ordering that petitioner with SIJ status be released from custody and not re-detained without notice and an opportunity to be heard on the termination of petitioner's deferred action).

[15]   In their response, Respondents point to a case on appeal before the Second Circuit. DE 13, n.1 (citing *Cunha v. Freden*, No. 25-CV-6532 (MAV), 2025 WL 3280575, at *1 (W.D.N.Y. Nov. 25, 2025)).  The appeal seems limited to the issue of whether the Government's detention authority in that case derives from § 1225 or § 1226, yet this Court has already ruled that the issue is not dispositive of the many issues presented here.  *Garcia Lanza*, 2026 WL 585130 at *6.  For example, the decision in *Cunha* explicitly did not reach the petitioner's due process claim.  2025 WL 3280575, at *7.

lawful manner, specifically with regard to the matters described in paragraphs A.I through A.IV above. *See Clarke v. U.S. Dep't of Homeland Sec.*, 2025 WL 3674471, at *9 (requiring respondents' counsel to "identify[ ] the steps that will be taken to address these matters and ensure compliance with the law going forward"); *In re 21st Birthday Denials of Special Immigrant Juv. Status Applications by USCIS*, 637 F. Supp. 3d 23, 37 (E.D.N.Y. 2022) (directing defendants to "[d]escribe the steps" they have taken to "ensure USCIS's compliance with the law and its own regulations" regarding SIJS applicants).

**Conclusion**

Based on the foregoing, it is hereby Ordered as follows:

1.  The petition is granted provisionally pending further proceedings described herein;

2.  The Court's previous order setting terms and conditions of release shall remain in effect until the resolution of all matters associated with this case. The parties may request modification of these terms and conditions upon good cause shown. Any additional terms and conditions of release imposed by ICE were unauthorized and shall not be binding upon Petitioner;

3.  The purported revocation of Petitioner's period of deferred action and work authorization are deemed vacated and without force and effect. ICE is directed to locate and return Petitioner's work authorization card forthwith;

4.  Within 21 days of the date of this Order, Respondents are to advise this Court of the steps that will be taken to ensure that future ICE enforcement actions within the Eastern District of New York shall be conducted in a lawful manner, particularly with regard to the matters described in paragraphs A.I through A.IV  above; and

5.  Any application for attorney's fees and costs under the Equal Access to Justice Act shall await the conclusion of the proceedings in this matter.

Dated: March 16, 2026
         Central Islip, New York

SO ORDERED.


 /s/  Gary R. Brown
GARY R. BROWN
United States District Judge