UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
WILLIAM ENRIQUE SANCHEZ
ALFARO,

                              Petitioner,

              v.

MARKWAYNE MULLIN, Secretary, U.S.
Dept. of Homeland Security, *et al*.

                              Respondents.

------------------------------------------------------x

**MEMORANDUM & ORDER**

Civil Action No.
26-0766 (GRB)

**FILED
CLERK**

4/27/2026

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**GARY R. BROWN, United States District Judge:**

> *I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter.*
>
>                    -Excerpt of Oath of Allegiance required
>                    of all federal officers, 5 U.S.C. §3331.

On March 16, 2026, this Court entered a decision providing detailed findings in support of the Court's determination that Immigration Customs and Enforcement ("ICE") agents had effected an illegal arrest and detention of petitioner and had subjected him to retaliatory action. That decision followed an adversarial hearing, which cataloged violations of the United States Constitution, statutes and regulations committed by ICE agents in effecting that arrest and detention. The Court provided respondents – which include the Attorney General of the United States, the head of DHS and the regional director of ICE, all represented by the United States Attorney in

this District – a period of 21 days to review the situation and provide the Court with a letter detailing the remedial steps that would be undertaken.

Remarkably, shortly before the deadline, the AUSA representing respondents sought leave to file a motion to reconsider and, without adequate cause, attempted to indefinitely delay the response directed by the Court. The Court granted a short adjournment and granted leave to file the motion for reconsideration. Respondents filed a brief which integrated a response to the Court's direction.

Faced with a detailed litany of legal violations committed by federal agents, respondents, charged as guardians of our Nation's law and Constitution, provided the following description of the efforts that would be undertaken to ensure compliance with the law:

Nothing.

Instead, the United States Attorney has filed a brief laden with frivolous reconsideration arguments.

So, paradoxically, it is this Court's turn to ask respondents to reconsider their position. In these pages, this Court clarifies and reiterates its Order, and hereby permits respondents, through the U.S. Attorney's Office, two weeks to advise the Court as to what steps it intends to implement to address widespread and ongoing unlawfulness documented in the record of this case.

Should respondents' answer remain unchanged, the Court will take appropriate action.

**The Proceedings**

Petitioner commenced this matter by filing a petition and a motion for an Order to Show Cause on February 10, 2026.  Docket Entries ("DE") 1 and 2.  The next day, the Court entered an Emergency Order to Show Cause, setting a hearing for February 12 "to determine whether petitioner should be released on bail."  Electronic Order of February 11, 2026.  On February 12, petitioner filed a Motion for Bail, including more than 100 pages of supporting material outlining a bail package and attesting to his *bona fides*.  DE 8.  On February 12, the Court held the bail hearing.  DE 21.  At the conclusion of that hearing, petitioner was released on his own recognizance, with instructions to return to court, and the Court warned petitioner of the consequences of failing to return.  DE 21 at 11.  During the bail hearing, the AUSA was unaware of the reasons for petitioner's arrest; as such, the Court scheduled a hearing on that issue.  Electronic Order dated February 12, 2026.

The findings from that hearing are set forth in the Court's decision, *Sanchez Alfaro v. Mullin*, 26-CV-0766 (GRB), 2026 WL 734348, at *3 (E.D.N.Y. Mar. 16, 2026), which is incorporated by reference, as is this Court's determination in *Garcia Lanza v. Noem*, 26-CV-0029 (GRB), __ F. Supp. 3d ___, 2026 WL 585130 at *1 (E.D.N.Y. Mar. 3, 2026).  Based on those findings, the Court determined that the officers violated petitioner's rights in four distinct ways:

1.  **Unauthorized Warrantless Arrest.**  ICE officers may only effect a warrantless arrest on individuals "likely to escape before a warrant can be obtained."  8 U.S.C.A. § 1357; 8 C.F.R. 287.8(c)(2)(ii) and, as no such claim had been or

could be made here, the warrantless arrest and detention of petitioner exceeded their authority. *Sanchez Alfaro*, 2026 WL 734348 at *5.[1]

2. **Post-Arrest Issuance of Process.** The officers "openly admitted that they arrested the wrong man and that the administrative arrest warrant and related NTA were issued after the arrest in question." *Id.* (quoting *Garcia Lanza*, 2026 WL 585130 at *9-10). Such *post-hoc* documentation does not cure the illegal arrest and detention. *Id.*

3. **Arrest of SIJS, Deferred Action and Work Authorization Applicants.** As USCIS committed to take no steps to effect petitioner's removal and permitted him to work in the U.S., his arrest and detention without notice or changed circumstances constituted a violation of law. *Id.*; *Garcia Lanza*, 2026 WL 585130 at *4-5.

4. **Retaliatory Actions**. Subsequent to petitioner's arrest and detention, and without identifying any additional basis, respondents revoked petitioner's grant of deferred action and work authorization in violation of statutory and regulatory protections and the Due Process clause of the U.S. Constitution.

---

[1] *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 49 (D.D.C. 2025) ("Defendants' systemic failure to apply the probable cause standard, including the failure to consider escape risk, directly violates the clear statutory requirements under the INA, *see* 8 U.S.C. § 1357(a)(2), and DHS's implementing regulations, *see* 8 C.F.R. § 287.8(c)(2)(ii).").

*Sanchez Alfaro*, 2026 WL 734348 at \*6 (citing *Garcia Lanza*, 2026 WL 585130 at

\*6-9; *Mantena v. Johnson*, 809 F.3d 721, 724 (2d Cir. 2015)).

## DISCUSSION

### *Standard for a Motion to Reconsider*

Motions for reconsideration are governed by Local Rule 6.3.  As one court has

observed:

> Local Rule 6.3 provides in pertinent part: "There shall be served with the
> notice of motion a memorandum setting forth concisely the matters or
> controlling decisions which counsel believes the court has overlooked."
> Thus, to be entitled to reargument, Plaintiffs must demonstrate that the
> Court overlooked controlling decisions or factual matters that were put
> before it on the underlying motion.

*Shamis v. Ambassador Factors Corp.*, 187 F.R.D. 148, 151 (S.D.N.Y. 1999) (collecting cases).

> This Court has previously held:

> "[R]econsideration of a previous order is an extraordinary remedy to be
> employed sparingly in the interests of finality and conservation of scarce
> judicial resources."  *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F.Supp.2d
> 613, 614 (S.D.N.Y. 2000) (citation omitted).  "The provision for reargument
> is not designed to allow wasteful repetition of arguments already briefed,
> considered and decided."  *Schonberger v. Serchuk,* 742 F.Supp. 108, 119
> (S.D.N.Y. 1990).  "The major grounds justifying reconsideration are 'an
> intervening change of controlling law, the availability of new evidence, or
> the need to correct a clear error or prevent manifest injustice.'"  *Virgin Atl.
> Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992)
> (quoting 18 C. Wright, et al., *Federal Practice & Procedure* § 4478 at 790).

Thus, a request for reconsideration under Local Rule 6.3 must advance controlling law or factual matters that the movant believes the Court overlooked in its decision on the underlying matter and that "might reasonably be expected to alter the conclusion reached by the Court." *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995). "Rule 6.3 is intended to 'ensure the finality of decisions and to prevent the practice of a losing party ... plugging the gaps of a lost motion with additional matters.'" *SEC v. Ashbury Capital Partners,* No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting *Carolco Pictures, Inc. v. Sirota,* 700 F.Supp. 169, 170 (S.D.N.Y. 1988)). A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent Rule 6.3 from being used either to advance different theories not previously argued or as a substitute for appealing a final judgment. *See Shamis v. Ambassador Factors Corp.,* 187 F.R.D. 148, 151 (S.D.N.Y. 1999).

*Sands Harbor Marina Corp. v. USI Ins. Serv. Nat'l, Inc.*, 09-CV-3855 (GRB) (ARL), 2022 WL 17477852, at *1 (E.D.N.Y. Dec. 6, 2022).

*Application*

On this motion, respondents raise matters that are both factually incorrect and legally spurious. Plainly, these constructs fail to meet the exacting standard for a motion for reconsideration. Several examples follow:

**A. Respondents' Argument that Petitioner's Release Renders this Action Moot**

Respondents assert that "this Court has granted complete relief to the Petitioner by ordering his release from custody — the most complete and only relief that habeas corpus has to offer." DE 19-1 at 9. Specifically, respondents contend – as they have in

other matters before this Court – that "Relief other than 'simple release' is not available in a habeas action.")  *Id*. at 13 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 119 (2020)) ("Claims so far outside the core of habeas may not be pursued through habeas.").  Stretching this concept a bit further, counsel for respondents submits that in ordering the Petitioner's release, "the Court has provided all the relief sought and, thus, there is no longer a case or controversy to extend Article III jurisdiction."  *Id.*

The problem with these assertions is simple: none of them are true.

We begin with the Government's citation to *Thuraissigiam*.  In that case, "respondent did not ask to be released.  Instead, he sought entirely different relief: vacatur of his 'removal order' and 'an order directing [the Department] to provide him with a new ... opportunity to apply for asylum and other relief from removal.'" *Thuraissigiam*, 591 U.S. at 117–18 ("Not only did respondent fail to seek release, he does not dispute that confinement during the pendency of expedited asylum review, and even during the additional proceedings he seeks, is lawful.").  In that case, the respondent did "not want 'simple release' but, ultimately, the opportunity to remain lawfully in the United States." *Id.* at 119.  Thus, the holding in *Thuraissigiam,* to wit: "the relief requested falls outside the scope of the writ as it was understood when the Constitution was adopted," *id.,* renders the non-contextual excerpt seized upon by the Government suggesting that a habeas petition may only encompass simple release – at best - non-binding *dicta*.  Respondents' selective parsing of *Thuraissigiam* could be fairly described as misstatement.

Just as "a single sentence of *dicta*, even if it is from the Supreme Court, does not supersede the plain statutory language," *United States v. Scott*, 778 F. Supp. 3d 506, 513 (E.D.N.Y. 2025) (citing *NCAA v. Alston*, 594 U.S. 69, 93 (2021)) ("aside" and "stray comments" are not binding); it is equally true that a stray comment (or, perhaps in this case, inopportune phrasing), cannot possibly supersede an express holding of the Supreme Court and other binding authority.  And, in this instance, there is Supreme Court and Second Circuit case law – both long before and after *Thuraissigiam* – that provides the precise opposite of the assertion made by respondents' counsel.

Nearly a half-century ago, the Supreme Court decided *Peyton v. Rowe*, 391 U.S. 54 (1968).  The question presented there was "whether a district court may entertain a petition for a writ of habeas corpus from a prisoner incarcerated under consecutive sentences who claims that a sentence that he is scheduled to serve in the future is invalid because of a deprivation of rights guaranteed by the Constitution." *Peyton*, 391 U.S. at 55.  Rejecting a strict construction of the habeas statute that would have denied relief from the petitioner's future sentence on the grounds that he "was not 'in custody,'" the Court explained:

> '(The writ) is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty.'
>
> *[T]he statute does not deny the federal courts power to fashion appropriate relief other than immediate release.* Since 1874, the habeas corpus statute has

> directed the courts to determine the facts and dispose of the case summarily, 'as law and justice require.' Rev.Stat. § 761 (1874), superseded by 28 U.S.C. § 2243.

> Thus, to the extent that *McNally* relied on the notion that immediate physical release was the only remedy under the federal writ of habeas corpus, it finds no support in the statute and has been rejected by this Court in subsequent decisions.

*Id.* at 66-67, (quoting *Jones v. Cunningham*, 371 U.S. 236 (1963) (emphasis added)).  In *Trump v. J. G. G.*, decided just last year – several years after *Thuraissigiam* – the Supreme Court observed that "immediate physical release [is not] the only remedy under the federal writ of habeas corpus."  604 U.S. 670, 672 (2025) (citing *Peyton v. Rowe*, 391 U.S. 54, 67 (1968); *Nance v. Ward*, 597 U.S. 159, 167 (2022); and *In re Bonner*, 151 U.S. 242, 254, 259 (1894)).  Similarly, the Second Circuit has provided that:

> The purpose of habeas corpus is to impose limitations on the Government's ability to do these things. Habeas corpus, as the Supreme Court has said, is an "adaptable remedy," the "precise application and scope" of which changes "depending upon the circumstances." The equitable and flexible nature of habeas relief also gives the reviewing court considerable latitude.

*Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir. 2020) (internal citations omitted).

Respondents cannot plead ignorance, as this Court has cited and quoted these principles in recent decisions involving the same respondents concerning similar issues.

*Garcia Lanza,* 2026 WL 585130, at *9 (quoting *Velasco Lopez).*  Counsel's assertion and selective quotation from *Thuraissigiam* proves misleading.

### B. Respondents' Contention that the Party Presentation Principle Barred the Court from Considering the Implications of Petitioner's SIJ Status, Deferred Action and Work Authorization

Counsel attempts to invoke the party presentation principle to challenge this Court's determination that petitioner, having been awarded SIJ status, deferred action and work authorization, was not subject to arrest and detention without some form of notice and an opportunity to be heard.  Specifically, respondents characterize the underlying circumstances as follows:

> Here, it was the Court, not Petitioner or Respondents, that *sua sponte* challenged Respondents' authority to detain someone with SIJ classification, DA, and work authorization, and the government's ability to revoke DA. *See* Feb. 25, 2026 evidentiary hearing transcript, Tr. 61:13-19 (referring to "some language in the statute around SIJ status that the individual would be deemed paroled for certain purposes," and suggesting to the parties that "if you have anything to say about that I would be interested.").

DE 19-1 at 15-16.  This can only be construed as a blatant misstatement.

In his motion for an Order to Show Cause, filed at the outset of the case, petitioner set forth the following:

> Detention or removal of an approved SIJS beneficiary who is eligible for deferred action would cause irreparable harm, as it would sever the youth from the protections conferred by the state court's findings and undermine the 1-360 petition already granted, while removal would

effectively nullify the pending path to lawful permanent residence. Petitioner's continued detention constitutes irreparable harm as a matter of law. The loss of physical liberty, even for a brief period, is irreparable because no later relief can restore the time spent in detention. Each day Petitioner remains detained compound it constitutional injury that cannot be remedied. Absent immediate court intervention, Petitioner faces the irreparable harm of removal prior to meaningful adjudication of his claims.

DE 2 at 3.  Thus, petitioner framed the issue.

Counsel for respondents also mischaracterized the Court's invitation to brief these issues, omitting important portions of the transcript:

> **One thing you might want to think about in the briefing, both sides,** there's some language in the statute around SIJ status that the individual would be deemed paroled for certain purposes. **Now, the testimony today suggested that might not matter anyway, but I'm not sure it wouldn't matter. But** if you have anything to say about that I would be interested.

DE 20 at 61 (omitted portions in bold).  The withheld portions make it clear: the Court suggested the statutory language *might* be relevant and left it to the parties' discretion as to whether this statutory language should be subject of briefing.  The inquiry was not tangential.  First, the petition raised the issue of SIJ status providing functional equivalence to parole.  DE 1 at 7 ("one could assert that a grant of deferred action is a parole.  SIJS approval is a parolee within the definition of 8 CFR §274a.12(c)(11 ).").  Second, specific testimony at the hearing by the ICE officers revealed both their

unfamiliarity with the parameters of immigration parole and SIJ status and their steadfast conviction that individuals who had been paroled into the United States by immigration authorities remained nonetheless subject of arrest, detention and removal. DE 20 at 48-50.

Respondents, as counsel acknowledges, "addressed this issue in their response to the Petition." DE 19-1 at 16. Indeed, respondents' counsel thoroughly argued the question in their papers. DE 13 at 3-4. Petitioner's counsel countered, arguing that it was "difficult to reconcile the government's current position that Petitioner warranted arrest and detention with its own prior determinations that he merited humanitarian protection, deferred action, and authorization to work in the United States." DE 14 at 4. Ignoring these facts, respondents make an illogical leap, arguing that although the respondents briefed these issues, a failure to respond to their arguments in a particular manner by petitioner's counsel "arguably precluded the Court from reaching that issue." DE 19-1 at 15 (focusing on the equitable nature of counsel's argument). This was hardly a concession by petitioner, and the party presentation principle is inapposite.

### C. Purported Misapprehension as to Responsibility for Revoking Deferred Action

In their brief, Respondents make this remarkable assertion:

Respondents note that the Court may be under the misapprehension that it was ICE that revoked Petitioner's deferred action, when in fact it was USCIS. *See* Decision 12 ("discretion [to revoke] resides with USCIS, not ICE, and therefore could not be revoked by the ICE officers."); *but see* DE

13-1 (letter providing "notification that [USCIS] has individually reviewed your case and exercised discretion to terminate your period of deferred action").

*Id.* at n. 6.  Contrary to respondents' assertions, it was the ICE officers who misunderstand whether ICE has authority to revoke deferred action.  As noted in the opinion, one officer testified that "the deferral part is what has, you know, become confusing ... but he's still coming into custody," while, more alarmingly, a second officer testified that deferred action "means **we** can't remove him at that time, you know, they won't be able to be removed from the United States **until we clear up that deferred action**.").  *Sanchez Alfaro*, 2026 WL 734348, at *5 (quoting Tr. 20, 44).  Thus, the ICE officers seemed to believe that they had the ability to apprehend individuals who had received a grant of deferred action, initiate removal proceedings against them and then "clear up" deferred action.  Although counsel produced a letter from USCIS stating that deferred action had been revoked after petitioner's arrest, respondents have yet to produce any evidence of a valid exercise of discretion by USCIS or any reason – other than the illegal arrest of the petitioner by ICE officers – that petitioner's deferred action grant was revoked.

### D.  Respondents' Contention that Petitioner's Release on his Own Recognizance Moots the Case

Counsel argues that "under controlling law, once Petitioner was released from ICE custody, the Court's jurisdiction over this habeas matter ended."  DE 19-1 at 7.  The only relevant "controlling law" cited is *Pierrilus v. U.S. Immigration & Customs Enforcement,* 293 F. Appx. 78, 79–80 (2d Cir. 2008), a summary order which respondents

cite for the proposition that "[u]nder 28 U.S.C. § 2241, the habeas statute under which petitioner challenged his detention, we retain jurisdiction so long as the petitioner is 'in custody.'"

First, respondents misconstrue the Court's ruling concerning release.  DE 19-1 at 16 ("the Court has ordered all the relief available in this case: it has ordered Petitioner to be released on his own recognizance without any terms [or] conditions"); 7 n. 2 "the Court released Petitioner on his own recognizance without setting any terms or conditions of release, other than directing Petitioner to appear and testify at the evidentiary hearing.").  These characterizations contrast the actual decision, which provided:

> The Court's previous order setting terms and conditions of release shall remain in effect until the resolution of all matters associated with this case. The parties may request modification of these terms and conditions upon good cause shown.

*Sanchez Alfaro*, 2026 WL 734348, at *7.

Respondents acknowledge that "the Court released Petitioner on his own recognizance."  DE 19-1 at 7 n.2; *cf.* DE 21 at 11-12 (Court cautioning petitioner concerning consequences of failure to appear).  Release on personal recognizance requires return to court on demand; it is a restriction of liberty enforced by the individual's word.  And "[i]n the habeas context, we have held that a person released [ ] on his own recognizance is 'in custody' within the meaning of the statute." *Jennings v. Rodriguez*, 583 U.S. 281, 350 (2018) (Breyer, J., dissenting) (quoting *Hensley v. Municipal*

*Court, San Jose–Milpitas Judicial Dist., Santa Clara Cty.*, 411 U.S. 345, 349 (1973) and citing

*Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 300–301 (1984)).

Thus, respondents' jurisdictional arguments predicated upon petitioner's release

are, like the other examples cited above, entirely meritless.

### E.  The § 1225 / § 1226 Argument

Counsel for respondents, once again, recites the argument that petitioner's arrest

was effected under the detention authority of 8 U.S.C. § 1225(b)(2)(A), rather than §

1226.  That argument is remarkable because, as repeatedly highlighted by this Court,

the distinction is entirely inapplicable to this matter.  "Respondents cling to the

argument regarding detention authority under 8 U.S.C. § 1226(a).  Given the facts of this

case, 'the 1225/1226 distinction argument misses the mark entirely.'"  *Sanchez Alfaro*,

2026 WL 734348 at *5 (quoting *Garcia Lanza,* 2026 WL 585130 at *6).  The basis for

detention would have no effect on the four issues identified above, including the

warrantless arrest,[2] post-hoc paperwork, disregard of legally awarded status and

retaliatory revocation of that status.  In other words, even if the Government were to

---

[2]  As in *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 14 (D.D.C. 2025), petitioner here is "not challenging the long-standing authority under the Immigration and Naturalization Act ("INA") for Immigration and Customs Enforcement ("ICE") to make civil arrests of noncitizens, pursuant to an administrative warrant, and to detain noncitizens during the pendency of removal proceedings, when the statutory requirements are met.  *See* 8 U.S.C. § 1226(a) (authorizing arrest of a noncitizen pursuant to an administrative warrant and detention during the pendency of removal proceedings).  Nor [is petitioner] challenging the authority provided in the INA to make warrantless civil arrests of a noncitizen to facilitate that person's removal from the country, when statutory and regulatory requirements are met.  *See* 8 U.S.C. § 1357(a)(2)."

prevail as to their "understanding that Section 1225(b)(2)(A) mandates detention of individuals who are 'applicants for admission,' like Petitioner," DE 19-1 at 11,[3] this case "raise[s] significant, separate constitutional [and statutory] issues that are independent from the legal question of which provision of the INA applies." *Parada Cruz v. Mullin*, 26-CV-1110 (SJB), 2026 WL 1027441, at *2 (E.D.N.Y. Apr. 16, 2026).

In other words – even assuming that respondents prevail on their interpretation of § 1225 at the Second Circuit, the defects identified herein remain.  Those issues include ICE officers exceeding their authority to effect warrantless arrests under 8 U.S.C.A. § 1357, conduct which presents in turn both statutory and constitutional problems: the officers' failure to assess flight risk violated federal statutes, and the officers created constitutional Due Process issues by both subjecting petitioner to random arrest after he was provided with deferred action and work authorization and by attempting, post-arrest, to rationalize the arrest and retaliate against petitioner. Furthermore, the mechanism for petitioner's apprehension – officers confusing him for an individual purportedly targeted by them – should have meant that he was "free to go after the brief encounter." *Noem v. Vasquez Perdomo*, 146 S. Ct. 1, 3 (2025) (Kavanaugh, J., concurring).

As such, the motion for reconsideration is DENIED.

---

[3] "[T]he Court has already ruled – as have hundreds of other judges, that people like Petitioners are being detained pursuant to 8 U.S.C. § 1226(a), a law that, subject to exceptions inapplicable here, requires a warrant to detain, not § 1225." *Parada Cruz v. Mullin*, 2026 WL 1027441, at *2 (collecting cases).

*Clarification of the Order*

Respondents argue that paragraph 4 of the Court's order constitutes "coercive relief that interfere[s] with the Government's efforts to operate." DE 19-1 at 10. That protest misstates the Court's order and reflects a misapprehension of the procedural posture of the case.

Sanchez Alfaro's original petition requested an injunction be entered against respondents. DE 1 at 12. And the Court has found that petitioner's arrest violated both federal statutes and the Constitution.

As a result, the Court has an obligation to ascertain whether the statutory and constitutional violations will recur as to this specific petitioner and, if so, order appropriate injunctive relief, as petitioner requested. *See Int'l Distribution Centers, Inc. v. Walsh Trucking Co.*, 62 B.R. 723, 734 (S.D.N.Y. 1986) ("The district court has both the duty and the authority to fashion relief that terminates the illegal acts [], that ensures that they do not recur and that eliminates their consequences."); *United States v. Fish Smokers Trade Council, Inc*, 183 F. Supp. 227, 236 (S.D.N.Y. 1960) ("[because] it would be unrealistic of this Court to infer that the defendants will abandon their unlawful activities[, i]t is incumbent on this Court to protect the public from a continuation of these activities by appropriate injunction."); *cf United States v. City of New York*, 905 F. Supp. 2d 438, 450 (E.D.N.Y. 2012) (explaining in the Title VII context that "th[e] court has broad authority to fashion the most complete relief possible, and has the duty to bar like discrimination in the future.") (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975)).

Far from "coercive relief," paragraph 4 of the Court's order was an invitation to respondents to assure the court that further relief, coercive or not, would be *unnecessary*. Respondents were directed to advise this Court of the steps that would be taken to ensure that future ICE enforcement actions within the Eastern District of New York shall be conducted in a lawful manner, particularly with respect to the four violations identified above. *Sanchez Alfaro*, 2026 WL 734348, at *7. For the avoidance of doubt, respondents' answer to that order might be "nothing." However, such an answer would not aid the court in determining whether further injunctive relief would be required to ensure that the constitutional and statutory violations visited upon petitioner do not recur.

Should the Court find that injunctive relief would be necessary to protect petitioner from persistent constitutional or statutory injuries, the Court is vested with substantial discretion to fashion an equitable remedy that will eliminate the risk of recurrence. *See New York City Hous. Auth. v. Kemp*, 89-CV-7183 (PKL), 1989 WL 161524, at *4 (S.D.N.Y. Dec. 22, 1989) ("The Court has a wide range of discretion in fashioning injunctive relief to be sure that past wrongdoing is corrected *and* that the recurrence of such conduct is prevented.") (emphasis in original). Respondents note that prospective relief would necessarily be confined to Sanchez Alfaro. The Supreme Court has explained, however, that in providing remedies to an aggrieved party, "the court's injunction might have the *practical effect* of benefiting nonparties." *Trump v. CASA*, Inc., 606 U.S. 831, 852 (2025). And in the context of affording habeas relief, the "equitable

and flexible nature of habeas relief also gives the reviewing court considerable latitude." *Velasco Lopez*, 978 F.3d at 855.

In addition to bearing on the propriety of an injunction in the first instance, a continuing failure to furnish any information about training, practice or policy revisions may leave the Court unable to determine whether an injunction explicitly confined to law enforcement action against petitioner would be adequate. If the Court were not satisfied that such an injunction would eliminate the likelihood of recurrent constitutional harms against petitioner, equitable relief at the policy level might be required to ensure that those harms do not in fact persist as to petitioner.

Finally, to the extent the Government suggests that petitioner's release mooted his pendant request for equitable relief, the Government is incorrect. In fact, it is "the defendant's burden to establish that it cannot reasonably be expected to resume *its* challenged conduct." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 243 (2024) (internal quotation marks omitted; emphasis in original); *see also Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 951 (2d Cir. 1978).

Respondents once again are directed to advise this Court of the steps that will be taken to ensure that future ICE enforcement actions within the Eastern District of New York shall be conducted in a lawful manner, particularly with respect to the four violations identified above, such that petitioner will not be subject to further illegal or unconstitutional stops, arrests, detention or retaliatory conduct. *Sanchez Alfaro*, 2026 WL 734348, at *7.

It is this Court's earnest hope that, as in other recent litigation, respondents will endeavor to responsibly resolve operational issues on their own initiative. *See Clarke v. Dept. of Homeland Security*, 25-CV-6773 (GRB).

*CONCLUSION*

Respondents' Motion for Reconsideration is DENIED. Respondents shall advise the Court within 14 days of the date of this opinion as to the steps – if any – they intend to take to remediate the issues identified herein.

Dated: April 27, 2026
     Central Islip, New York

                                  SO ORDERED.

                                  */s/ Gary R. Brown*
                                  GARY R. BROWN
                                  United States District Judge